# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 12, 2020            Decided July 6, 2021

No. 20-5054

CATO INSTITUTE,
APPELLANT

v.

SECURITIES AND EXCHANGE COMMISSION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00047)

———

*Robert J. McNamara* argued the cause for appellant. With him on the briefs was *Jaimie N. Cavanaugh*. *Paul M. Sherman* entered an appearance.

*Bruce D. Brown*, *Katie Townsend*, and *Lisa B. Zycherman* were on the brief for *amici curiae* Reporters Committee for Freedom of the Press in support of appellant.

*Jeffrey A. Berger*, Senior Litigation Counsel, Securities and Exchange Commission, argued the cause for appellees. With him on the brief were *Michael A. Conley*, Solicitor, and *Dina B. Mishra*, Senior Counsel. *Melinda Hardy*, Assistant General Counsel, entered an appearance.

2

Before: WILKINS and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:  The Cato Institute ("Cato") brought suit against the Securities and Exchange Commission ("SEC"), claiming that the SEC's practice of including no-deny provisions in its consent decrees violates the First Amendment. The District Court found that Cato had failed to allege an injury in fact, and so dismissed Cato's suit for lack of standing.  We affirm the District Court's dismissal on the alternate ground that Cato's alleged injury is not redressable through this lawsuit.

## I.

On January 9, 2019, Cato filed a complaint in the District Court against the SEC and its chairman and secretary in their official capacities, challenging the SEC's practice of including no-deny provisions in its consent decrees in civil and administrative proceedings.  Consent decrees are "compromises in which the parties give up something they might have won in litigation and waive their rights to litigation." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235 (1975).  "Because of its limited resources, the SEC has traditionally entered into consent decrees to settle most of its injunctive actions." *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983).  Defendants who enter into consent decrees with the SEC gain certain benefits:  they may settle the complaint against them without admitting the SEC's allegations, and often "seek and receive concessions concerning the violations to be alleged in the complaint, the language and factual allegations in the complaint, and the collateral, administrative consequences of the consent decree." *Id.*  Since 1972,

3

however, the SEC has adhered to a policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," so as "to avoid creating, or permitting to be created, an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur."    Consent Decrees in Judicial or Administrative Proceedings, 37 Fed. Reg. 25,224, 25,224 (Nov. 29, 1972) (codified at 17 C.F.R. § 202.5(e)).    Cato contends that the SEC has applied this policy to prohibit defendants from denying any allegations made against them by the SEC, including allegations to which their consent decree did not require them to admit.    Because SEC defendants are prohibited from denying any allegations against them, they are unable, according to Cato, to report publicly that the SEC threatened them with unfounded charges or otherwise coerced them into entering into consent decrees.    Thus, according to Cato, the SEC's application of 17 C.F.R. § 202.5(e) impermissibly stifles public discussion of the SEC's prosecutorial tactics.

Cato itself has not entered into any consent decree with the SEC, but it alleges that it has contracted to publish a certain manuscript ("the manuscript") written by someone who is subject to such a consent decree.    Cato alleges that it cannot publish the manuscript because the consent decree prohibits the author from disputing any allegations made by the SEC against him, which, in the manuscript, he does.    Cato also alleges that it has been contacted by other individuals who have entered into similar consent decrees with the SEC.    Cato claims that but for the provisions of their consent decrees forbidding them from disputing the SEC's allegations against them, these individuals would be willing to participate in panel discussions hosted by Cato on the topic of the SEC's prosecutorial overreach, and to allow Cato to publish their testimonials in articles and blog posts.

4

Cato seeks six forms of relief: (1) a declaratory judgment that 17 C.F.R. § 202.5(e) as interpreted and enforced by the SEC is unconstitutional under the First Amendment; (2) a permanent injunction against the enforcement of 17 C.F.R. § 202.5(e); (3) a declaratory judgment that the no-deny provision of the consent decree entered into by the manuscript's author is unenforceable as a matter of law; (4) a declaratory judgment that all no-deny provisions in the SEC's past consent decrees are unenforceable; (5) a permanent injunction prohibiting the SEC from continuing its practice of non-discretionary use of no-deny provisions in civil and administrative settlements; and (6) all further and equitable relief as the Court may deem just and proper. Cato's complaint invokes the First Amendment and the Declaratory Judgment Act, 28 U.S.C. § 2201, and it presumably intends to use a declaratory judgment as the predicate for an injunction and further relief pursuant to 28 U.S.C. § 2202. *See Powell v. McCormack*, 395 U.S. 486, 499 (1969).

On February 10, 2020, the District Court issued an order and memorandum opinion dismissing Cato's complaint for lack of standing. The District Court found that Cato had failed to allege an injury in fact because the SEC's no-deny provisions did not apply to Cato, and because Cato had "not alleged that there is any actual impediment to its exercise of its contractual rights to publish the book, to its sponsorship of a panel discussion, or to its promotional activities. . . . [or that] any specific action is threatened or even contemplated against it." *Cato Inst. v. SEC*, 438 F. Supp. 3d 44, 52 (D.D.C. 2020) (quoting *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984)) (internal quotation marks omitted). The District Court also found that Cato could not allege that it had been denied the right to receive information, because "it received and is fully aware of the contents of the author's manuscript." *Id.* at 54.

5

Cato timely appealed to this Court for review of the District Court's order on March 3, 2020.

**II.**

We review *de novo* the District Court's dismissal of Cato's claim for lack of standing. *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007). In doing so, we assume the truth of all material factual allegations in Cato's complaint and construe the complaint liberally, granting Cato the benefit of all reasonable inferences that can be derived from the facts alleged. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). We also assume that Cato will prevail on the merits of its suit and obtain the relief it seeks. *Committee on the Judiciary of the U.S. House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (en banc).

Cato bears the burden of establishing standing for each form of relief it seeks. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To demonstrate injury in fact, Cato must show that its injury is concrete—*i.e.*, that it "actually exist[s]," *Spokeo, Inc. v. Robins*, 136 S. Ct 1540, 1548 (2016); that it is particularized—*i.e.*, that it "affect[s] the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1; and that it is imminent—*i.e.*, that there is a "substantial probability of injury," *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (cleaned up). To demonstrate causation, Cato must show a "fairly traceable connection" between the complained-of conduct of the defendant and the injury claimed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). And to demonstrate redressability, Cato, whose alleged injury arises from the government's regulation of a third party, must

6

show that there is a "substantial probability" that "if the court affords the relief requested, the injury will be removed." *Chamber of Commerce*, 642 F.3d at 201 (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)) (alterations omitted).

Cato's alleged injury is that it is prevented from publishing speech by certain SEC defendants averring that the SEC threatened them with unfounded charges or otherwise coerced them into entering settlement agreements. Cato alleges that it would be able to publish this speech but for the fact that the SEC defendants are subject to no-deny provisions forbidding them from disputing the SEC's allegations against them and are therefore unable and unwilling to allow Cato to publish their speech.

The fatal stumbling block for Cato is that even assuming that it will prevail on the merits and obtain the relief it seeks, Cato's alleged injury would not be redressed. That is because the no-deny provisions that bind the SEC defendants whose speech Cato wishes to publish are contained in consent decrees. "A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). Violations of court orders are punishable by criminal contempt, *see United States v. United Mine Workers*, 330 U.S. 258, 294 (1947), and a court may institute criminal contempt proceedings against an SEC defendant who violates a no-deny provision contained in a consent decree issued by that court even absent the SEC's consent, *see Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793–95 (1987); *Morrison v. Olson*, 487 U.S. 654, 676 (1988). So regardless of whether the SEC is enjoined from seeking to enforce the no-deny provisions in its consent decrees, the courts that issued the

7

consent decrees would still be able to enforce the no-deny provisions contained therein. And a merits opinion from this Court holding the no-deny provisions to be in violation of Cato's rights would not bind district courts "in jurisdictions around the country" from enforcing their own judgments. Am. Compl. ¶ 42. (It is "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of the U.S.*, 445 U.S. 375, 386 (1980).) Moreover, Cato expressly disclaims that it seeks an order controlling how a district court—even a District of Columbia district court—enforces its particular consent decree. Reply Br. at 24–25. Instead, Cato seeks only to enjoin the SEC from threatening to enforce a decree or settlement or from taking steps to enforce a decree or settlement. *Id.* Therefore, even assuming that Cato prevails on the merits and obtains the relief it seeks, the SEC defendants would remain unable to allow Cato to publish their speech, and Cato's injury would not be redressed.

The cases upon which Cato primarily relies—*Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019), and *Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000)—are not to the contrary. In *Overbey*, the Fourth Circuit found that plaintiffs had standing to challenge the Baltimore Police Department's use of non-disparagement clauses in its settlement agreements. 930 F.3d at 226–230. The Fourth Circuit did not find that the Baltimore Police Department's settlement agreements were incorporated in consent decrees, and even if it had, those consent decrees all would have likely been issued by Maryland courts within the Fourth Circuit. More importantly, however, the Fourth Circuit did not analyze redressability, and so its opinion established no precedent on that issue. *See Steel Co.*, 523 U.S. at 91. In *Pitt News v. Fisher*, the Third Circuit found that plaintiffs had standing to challenge a Pennsylvania law the

8

enforcement of which they alleged would violate their First Amendment rights. 215 F.3d at 358. Plaintiffs' injury was redressable in that case because were they to succeed on the merits, enforcement of the law would be enjoined. *Id.* at 361; *see also Pitt News v. Pappert*, 379 F.3d 96 (3d Cir. 2004) (same). By contrast, were Cato's suit to succeed, enforcement of the no-deny provisions would not be enjoined for the reasons given above.

Cato also asserts in its briefing that SEC defendants are sometimes bound by no-deny provisions that are not part of a consent decree or incorporated by reference into a final judgment, *see* Appellant Br. at 7 n.2; Reply Br. at 24. The District Court, however, construed Cato's complaint to allege that the SEC defendants whose speech Cato wishes to publish are bound by no-deny provisions contained in consent decrees. *See Cato Inst. v. SEC*, 438 F. Supp. 3d at 47 ("Plaintiff alleges that the SEC has carried out this policy by requiring that an express 'no-deny' provision be included in the consent judgment as a condition of settling any civil or administrative action brought by the agency."). We find no error in that construction. Indeed, the regulation whose application Cato challenges in its complaint, 17 C.F.R. § 202.5(e), refers specifically to consent decrees. *See* Consent Decrees in Judicial or Administrative Proceedings, 37 Fed. Reg. at 25,224; Am. Compl. ¶¶ 13–30. Moreover, Cato has neither alleged in its complaint, nor asserted in its briefing, that the no-deny provisions that bind the SEC defendants whose speech it wishes to publish are not part of a consent decree or incorporated by reference into a final judgment. When assessing standing at any stage of the litigation, we do not accept inferences that are unsupported by the facts alleged in the complaint. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019). We therefore construe the complaint, as did the District Court, to allege that

9

the SEC defendants whose speech Cato wishes to publish are bound by no-deny provisions contained in consent decrees.

Because the SEC defendants whose speech Cato wishes to publish are bound by no-deny provisions contained in consent decrees, and because an order from this Court enjoining the SEC from seeking to enforce its consent decrees would not prevent the courts that entered those decrees from enforcing the no-deny provisions therein, Cato's injury is not redressable through this suit. Cato therefore lacks standing and its complaint must be dismissed. *See Steel Co.*, 523 U.S. at 109–110.

*So ordered.*